Kenneth W. DeSHIELDS, Petitioner,

v.

Robert SNYDER, Warden, Delaware
Correctional Center,
Respondent.

Civ. A. No. 93–349–JJF.

United States District Court,
D. Delaware.

July 31, 1993.

Kevin M. Howard, of Prickett Jones Elliott Kristol & Schnee, Dover, DE, for petitioner.

Richard E. Fairbanks, Jr. and Loren C. Meyers, Deputy Attys. Gen., Dept. of Justice, Wilmington, DE, for respondent.

## OPINION

FARNAN, District Judge.

■ Presently before the Court is a Motion for Stay of Execution and a Motion to Proceed In Forma Pauperis filed by Kenneth DeShields ("DeShields") in this habeas corpus case filed pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Motion for a Stay of Execution will be denied,[1] the Motion to Proceed In Forma Pauperis will be granted, and the habeas Petition will be dismissed as lacking merit.[2]

---

1. In considering the Motion to Stay, the Court has reviewed DeShields' Petition (D.I. 2), DeShields' Motion for a Stay of Execution (D.I. 4), the Respondent's Answer to the Petition (D.I. 9), the State Court records (D.I. 7 and 8), the Respondent's Answer to the Motion for a Stay of Execution (D.I. 10) and any presumption of correctness under 28 U.S.C. § 2254(d). *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir. 1987). Due to the summary nature of DeShields' pleadings in this Court, the Court has referred to briefs filed by the Petitioner in the state courts when necessary to understand Petitioner's

claims. *See generally Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

2. In his Answer, the Respondent raises two procedural defects with regard to the Petition. First, the Respondent alleges that the Petition must be dismissed because DeShields did not personally sign the Petition. In the context of capital punishment cases, the Court concludes that 28 U.S.C. § 2242 which requires either the Petitioner or one who is "acting in his behalf" to sign the Petition, contemplates signature by the attorney who is representing the Petitioner at the

## I. FACTUAL BACKGROUND [3]

Following a jury trial in March 1986, DeShields was convicted and sentenced on two counts of murder in the first degree in violation of 11 Del.C. § 636; robbery in the first degree in violation of 11 Del.C. § 832(a)(2); and possession of a deadly weapon during the commission of a felony in violation of 11 Del.C. § 1447(a). The jury voted that the death penalty be imposed for each of the counts of murder in the first degree pursuant to 11 Del.C. § 4209. Further, the court imposed a 30 year term of imprisonment for the robbery conviction and 30 years imprisonment for the weapons charge.

On direct appeal, the Supreme Court of the State of Delaware affirmed the convictions and sentences. *DeShields v. State*, 534 A.2d 630 (Del.Supr.1987). On May 16, 1988, the United States Supreme Court denied DeShields' Petition for writ of certiorari. *DeShields v. State*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988).

Subsequently, DeShields' original defense counsel filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. On October 4, 1988, the Superior Court appointed new counsel to represent DeShields in his post-conviction relief efforts. On August 17, 1992, the Delaware Superior Court denied DeShields' motion and on June 10, 1993, the Delaware Supreme Court affirmed the Superior Court's denial of post-conviction relief. On July 7, 1993, the Superior Court of the State of Delaware in and for Sussex County ordered that DeShields be executed on August 4, 1993.

On July 26, 1993, DeShields filed this habeas Petition pursuant to 28 U.S.C. § 2254 (D.I. 2), a Motion for a Stay of Execution (D.I. 4) and a Motion to Proceed In Forma Pauperis (D.I. 3). The State filed an Answer on July 27, 1993 (D.I. 9), and an Answer to the Motion to Stay on July 28, 1993 (D.I. 10). Pursuant to Rule 8 of the Rules governing § 2254 cases, the Court finds no evidentiary hearing is necessary and disposition of the Petition is proper at this time.[4]

## II. DISCUSSION

In determining whether a stay of execution should be granted a court must balance the equities in the case. Consideration of the following factors is required:

a) Whether the movant has made a showing of likelihood of success on the merits;

b) Whether the movant has made a showing of irreparable injury if the stay is not granted;

c) Whether the granting of the stay would substantially harm the other parties; and

d) Whether the granting of the stay would serve the public interest.

*Herrera v. Collins*, 954 F.2d 1029, 1033 (5th Cir.1992); *O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir.1982), *cert. denied sub nom., O'Bryan v. McKaskle*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Flamer v. Chaffinch*, 774 F.Supp. 211, 217 (D.Del.1991).

---

Petitioner's request. Subsequent to the state's answer, the Petitioner filed a Second Amended Petition which the Petitioner signed. Thus, Respondent's contention is moot. The Petition will not be dismissed on the basis of DeShields not personally signing the petition. Second, the Respondent claims that the State of Delaware is not a proper party under Rule 2(a) of the Rules governing Section 2254 Actions and should be dismissed. The Petitioner agrees with this contention and in his Second Amended Petition has dismissed the State of Delaware.

3. For a thorough statement of the facts see *De-Shields v. State*, 534 A.2d 630, 632–34 (Del.Supr. 1987) (hereinafter *"DeShields I"*) and *State v. DeShields*, IS84–08–0075R1, 1075R1, 1275R1

and 2075R1, 1992 WL 245582 Memorandum Opinion August 17, 1992 (hereinafter *"DeShields II"*).

4. Rule 8 of the Rules governing § 2254 cases states:

If the Petition is not discussed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

There is no question that irreparable injury may result if the stay is not granted. *O'Bryan*, 691 F.2d at 708; *Flamer*, 774 F.Supp. at 218. As in all death penalty cases, an irreparable injury to the Petitioner results if a stay is denied and subsequently it is determined that the Petition had merit. However, this fact alone is not a sufficient reason to grant a stay. *See Gregg v. Georgia*, 429 U.S. 1301, 96 S.Ct. 3235, 50 L.Ed.2d 30 (1976) (Powell, Circuit Justice). Therefore, while cognizant of the ominous nature of the motion presently before the Court, the Court will focus on the merits of the claims asserted in the Petition. *See Mulligan v. Zant*, 531 F.Supp. 458, 460 (M.D.Ga.1982) ("the law cannot contemplate the carrying out of the execution alone as that harm, else that single consideration becomes overriding to the exclusion of" all others); *See also Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983) ("the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate").

With regard to the merits of the Petition, the central issue for the Court is whether the Petitioner has presented a "substantial case on the merits" of a serious legal question. *Herrera*, 954 F.2d at 1033 (quoting *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.1987) (quoting *O'Bryan*, 729 F.2d at 993)).[5] The Court concludes that DeShields has not presented any serious legal question in his Petition.

The claims raised by DeShields are as follows:

1) Failure of counsel to properly raise and preserve issues in the state courts thus violating DeShields' Sixth Amendment rights to effective assistance of counsel (D.I. 4 ¶ a);

2) Prosecutorial misconduct in the closing argument which resulted in a destruction of his right to a fair trial and denied him his right to due process under the Fourteenth Amendment (D.I. 4 ¶ b);

3) Prosecutorial misconduct in argument during the penalty phase thus violating his rights to due process under the Fourteenth Amendment (D.I. 4 ¶ c);

4) Ineffective assistance of counsel denying him his Sixth Amendment rights by failure of counsel to advise him of his right to address the jury during the penalty phase (D.I. 4 ¶ d);

5) Violation of his rights to due process under the Fourteenth Amendment because the trial court failed to instruct the jury properly on the issue of mitigating circumstances (D.I. 4 ¶ d);

6) Death by hanging or lethal injection is cruel and unusual punishment in violation of the Eighth Amendment (D.I. 4 ¶ e);

7) Violation of his due process rights under the Fourteenth Amendment when the trial court failed to strike certain jurors for cause (D.I. 4 ¶ f);

8) Trial court's failure to assure that he knowingly and voluntarily waived his rights pursuant to 11 Del.C. § 4209(c)(2) depriving him of his right to a fair trial under the Fourteenth Amendment (D.I. 4 ¶ g); and

9) The Delaware Supreme Court erred in their review of the Superior Court resulting in a violation of DeShields' due process rights under the Fourteenth Amendment (D.I. 4 ¶ h).

*A. Ineffective Assistance of Counsel Claims*

### 1. Standard of Review

To be successful in establishing a claim of ineffective assistance of counsel, a Petitioner must establish that [ (1) ] the "attorney's representation fell below an objective standard of reasonableness and, [ (2) ] had the attorney not failed the representa-

---

**5.** On motions for stays of execution in capital sentencing cases, the movant is not always required to show a likelihood of success on the merits but only has to present "a substantial case on the merits when a serious legal question is involved." *Herrera v. Collins*, 954 F.2d 1029, 1033 (quoting *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.1987) (quoting *O'Bryan v. McCaskle*, 729 F.2d 991, 993 (5th Cir.1984))).

tion of the client, there is a reasonable probability that the result would have been different." *Flamer v. Snyder, et al.*, 827 F.Supp. 1079, 1100 (D.Del.1993) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984)). The first prong of *Strickland* is satisfied when the Petitioner can show that errors were made that were so serious as to deprive the Petitioner of counsel as guaranteed by the Sixth Amendment. *Id.* at 1100 (citing *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064). In making this determination, the Court must look to the totality of circumstances. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Further, the Court on federal habeas review is bound by the underlying factual findings of the state court so long as they are adequately supported by the record. 28 U.S.C. § 2254(d). However, the Court is not bound by the state court's conclusion regarding the effectiveness of assistance the Petitioner received. *Strickland,* 466 U.S. at 697–98, 104 S.Ct. at 2069–70; *Reese v. Fulcomer,* 946 F.2d 247, 254 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992). Finally, on review, the Court is to presume that the attorney's conduct falls within the realm of objective reasonableness and it is the burden of the Petitioner to show otherwise. *Flamer,* 827 F.Supp. at 1101 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

## 2. Discussion

### a. Failure to Advise of Right to Address Jury

■ DeShields claims that his counsel was ineffective because he failed to advise DeShields of his right to address the jury during the penalty phase. (D.I. 4 ¶ a). Without addressing what, if any, effect DeShields' testimony may have had on the outcome, DeShields argues that the mere failure to advise him of this right is a violation of his Sixth Amendment right to effective assistance of counsel.

This claim was fairly presented to the state court on DeShields' motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. The Superior Court held an evidentiary hearing and at the conclusion of the hearing made the following finding:

> The Court accepts the testimony of Edward C. Gill, Esq. to the effect that it was the defense plan to have DeShields speak to the jury in the form of a closing argument to avoid his cross-examination. When Gill counseled DeShields to make such a statement, DeShields rejected this advice. Additionally, DeShields has not demonstrated a reasonable probability that his own argument which he now states he wanted to make would have changed the outcome.

*DeShields II,* 1992 WL 245582, at *7.

The Court finds that these factual findings of the state court made at the conclusion of an evidentiary hearing are fairly supported by the record, and are entitled to a presumption of correctness. 28 U.S.C. § 2254(d). Based on the state court's finding that DeShields in fact had been advised of his right to address the jury and it was he who made the decision not to, the Court concludes counsel for DeShields acted in an objectively reasonable manner under the circumstances. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2064–65, 2068.

### b. Failure to Preserve Issues in State Court

DeShields also argues that his counsel was ineffective because he failed to properly raise and preserve issues in the state courts. (D.I. 4 ¶ a). According to DeShields, the failure of his counsel to properly preserve the record has precluded the review of certain issues presented in his Petition and therefore constitutes ineffective assistance of counsel. (D.I. 4 ¶ a)

■ The Court finds this issue was not properly presented to the state courts and therefore concludes DeShields has not exhausted his state court remedies with regard to these claims. However, the Court also concludes that the failure to exhaust does not bar present consideration of the claim because no remedy is available to DeShields in the state court system. This is because the Court is persuaded that DeShields would be procedurally barred under Superior Court

Rules 61(i)(1), 61(i)(2), and 61(i)(3) from raising the subject claims in the state courts because he cannot establish the required cause and prejudice requirements for his default, or that the refusal to hear his claim would be manifestly unjust. As this Court recently stated in *Flamer:*

> In a habeas review, it is the Petitioner that bears the burden of establishing that exhaustion has been satisfied. *Landano v. Rafferty,* 897 F.2d 661, 668 (3d Cir.), *cert. denied* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990) *citing, Santana v. Fenton,* 685 F.2d 71, 73 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983); *Brown v. Cuyler,* 669 F.2d 155, 159 (3d Cir.1982) (per curiam). In order to satisfy the exhaustion requirement, a Petitioner must show that the claim has been fairly presented to the state courts which, in this context, requires the presentation of a substantially equivalent claim. *Id.* (citations omitted). In order for a claim to be considered substantially equivalent, both the legal theory and the facts upon which the Petitioner relies must have been presented to the state court. *Id.* at 669 (citations omitted). Only by assuring that the facts and legal theories have been fairly presented to the state court can the underlying goal of comity between the state and federal systems be maintained. For purposes of the exhaustion requirement, so long as the state courts had an opportunity to decide the matter, after it was fairly presented, the highest court of the state need not have specifically addressed the claim for exhaustion purposes. *Sullivan v. Cuyler,* 723 F.2d 1077, 1082 (3d Cir.1983).

. . . . .

[A]ssuming the present Petition were to be dismissed for failure to exhaust, the Court concludes that [Petitioner] would be procedurally barred in the state courts from raising the claim. *See* Del.Super.Ct.Crim.R. 61(i)(2) (prohibiting review of successive Petitions). It is the Court's view that [Petitioner] would be unable to show the cause and prejudice necessary to permit a review of the claim. In this regard, there is no explanation provided by Petitioner for his failure to address this claim in the state court. Further the Court is convinced that [Petitioner] would be unable to establish that prejudice resulted from the alleged failure of his counsel . . .

*Flamer v. Snyder, et al.,* 827 F.Supp. at 1099–1100.[6] Thus, the Court concludes that DeShields' ineffective assistance of counsel claim lacks merit because it would be procedurally barred if it were presented to the state court. However, even if the Court considered the claim on its merits, it is highly unlikely, based on the present state record, that the actions taken by his attorney would be deemed objectively unreasonable under the circumstances.

*B. Prosecutorial Misconduct Claims*

DeShields raises two claims with respect to prosecutorial misconduct. First, he claims that during the guilt/innocence phase of his trial the prosecutor committed errors in closing argument that deprived DeShields of his constitutional rights. Second, DeShields claims that in the penalty phase of the trial the prosecutor made arguments which were constitutionally improper. DeShields fails to allege what comments he considers were improper and therefore the Court has necessarily relied on the state court record and the Respondent's Answer in construing these claims.

### 1. Legal Standards

"The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory pow-

---

**6.** The Court recognizes and questions the harsh result of the Delaware statutory scheme regarding procedural bar and its interplay with the concept of exhaustion of remedies in the context of a federal habeas petition, however, the Court is bound by the state statutory scheme.

er.'" *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471 (quoting *Donnelly,* 416 U.S. at 642, 94 S.Ct. at 1871). In *Darden,* in determining whether the allegedly impermissible statements so infected the trial as to render it unfair, the Court determined that the weight of the evidence against the defendant "reduced the likelihood that the jury's decision was not influenced by argument." *Id.* at 182, 106 S.Ct. at 2472. The Court also noted that the trial court instructed the jury that "their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence." *Id.* at 182, 106 S.Ct. at 2472.

As the Third Circuit recently noted in *Ramseur v. Beyer,* 983 F.2d 1215, 1239 (3d Cir.1992), "[w]hile the line is sometimes a fine one, '[i]t is essential to distinguish between ordinary trial error and that sort of egregious misconduct which amounts to a denial of constitutional due process.'" (quoting *United States ex rel. Perry v. Mulligan,* 544 F.2d 674, 678 (3d Cir.1976), *cert. denied,* 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977)).

When a claim of prosecutorial misconduct is made and there is no contemporaneous objection then "we review only for plain error, as appellants failed to preserve their objections to the prosecutor's rebuttal summation." *United States v. Pungitore,* 910 F.2d 1084, 1125–26 (3d Cir.1990). Thus,

> the dispositive issue under the holdings of this Court is not whether the prosecutor's remarks amounted to error, but whether they rose to the level of "plain error" when he responded to defense counsel. In this setting and on this record the prosecutor's response—although error—was not "plain error" warranting the court to overlook the absence of any objection by the defense.

*United States v. Young,* 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1984). In *Young,* the court went on to state that

> The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only "particularly egregious errors," those errors that "seriously affect the fairness,

integrity or public reputation of judicial proceedings." In other words, the plain-error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."

*Id.* at 15, 105 S.Ct. at 1046 (citations omitted).

#### a. *Closing Argument Statements*

#### 1. **Parties' Contentions**

■ DeShields broadly claims that the prosecutor made impermissible statements during closing argument which resulted in the destruction of his right to a fair trial and denied him his right to due process under the Fourteenth Amendment (D.I. 4 ¶ b). DeShields raised a similar argument on direct appeal. On direct appeal, he asserted that it was impermissible for the prosecutor to comment on DeShields' failure to establish his whereabouts on the day of the murder. The prosecutor stated "I suppose if the defense had witnesses to show where he was earlier that day, you would have seen them." The prosecutor also stated later "So who is left? Kenneth Wesley DeShields is the one that is left." DeShields argued that the comments violated the rule announced in *Griffith v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) prohibiting prosecutorial comment on a defendant's failure to testify. DeShields also complained on direct appeal that during his rebuttal argument, the prosecutor made reference to justice being done by finding DeShields guilty of the crime as alleged. To the extent that DeShields is raising the same arguments here that he did in the state court, the Court finds he has exhausted his state remedies and the Court will review the claim on the merits. To the extent that DeShields is raising new arguments, the Court concludes that he is procedurally barred under the principles previously discussed.

The Respondent answers that the statements made by the prosecutor in his closing argument were not constitutionally impermissible. According to the Respondent, the defense counsel in his closing argument be-

gan creating other possible scenarios of how the victim was killed. The Respondent argues that the prosecutor then appropriately brought the evidence back into the context of DeShields' perpetration of the crime. In order to combat the defense's argument that the state had not established DeShields' whereabouts during the day, Respondent discusses the prosecutor statement: "I suppose if the defense had witnesses to show where he was earlier that day, you would have seen them." Then, Respondent argues, in an attempt to rebut the various possible scenarios that the defense had brought forward, the prosecutor said "So who is left? Kenneth Wesley DeShields is the one that is left."

Respondent asserts that the prosecutor's comments about DeShields' failure to present witnesses regarding his whereabouts on the day of the crime do not rise to a constitutional violation. According to the Respondent, a defendant's whereabouts can be established in so many ways that a mere reference to there being no proof of the defendant's factual theories does not give rise to an inference or a comment on DeShields' failure to testify.

Finally, with regard to the prosecutor's comments on justice being served by finding DeShields guilty, the Respondent argues that these remarks did not render DeShields' trial fundamentally unfair. Further, the Respondent contends that DeShields is unable to show that but for the challenged comments there is a reasonable probability that the verdict would have been different.

## 2. Discussion

■ The Court concludes that the prosecutor's comments on the failure of DeShields to produce witnesses to testify on his behalf, in the context of the trial as a whole, do not rise to a violation of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). *See Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir.1992) (citing *Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987)) ("In evaluating whether the prosecutor's misconduct rose to the level of constitutional violation, we must examine that conduct in the context of the trial as a whole."). The comments made by the prosecutor were not "manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Bontempo v. Fenton*, 692 F.2d 954, 959 (3d Cir. 1982). Thus, any claim based on the prosecutor's comments amounting to a violation of *Griffin* by implying that the defendant failed to testify are unpersuasive.

■ Further, if DeShields' claim is that the prosecutor's comments, including those made during the prosecutor's rebuttal, were such that he was subject to a constitutionally unfair trial, the Court concludes that the weight of the evidence against DeShields renders such a claim meritless.

In considering this claim, the Court has also considered the comments of the prosecutor in his rebuttal that finding DeShields guilty is the only way justice could be done and that the victim is entitled to a fair hearing of the evidence. The Court notes that defense counsel did object to these comments. The trial judge overruled the objection and stated that the jury would be specifically instructed not to be influenced by passion, prejudice, or other extraneous influences. Consistent with this ruling, the trial judge instructed the jury regarding what could and could not be permissibly weighed in making their determination of guilt or innocence. The Court finds the trial court's instructions to the jury in this regard were sufficient to cure any possible prejudice that may have resulted from the prosecutor's comments. Thus, the Court concludes that there is no support for DeShield's contention that his trial was so infected "with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Further, DeShields has not demonstrated that had the subject comments not been made, that he would have avoided conviction. Accordingly, DeShields' claims for habeas relief based on alleged prosecutorial misconduct during closing argument must be dismissed.

### b. Penalty Phase Argument
#### 1. Parties' Contentions

DeShields claims that prosecutorial misconduct during argument in the penalty

phase of his trial resulted in a violation of his rights to due process under the Fourteenth Amendment (D.I. 4 ¶ c). DeShields has challenged several aspects of the prosecutor's argument during the penalty phase. Although DeShields has not detailed in his Petition the grounds for his prosecutorial misconduct claim, the Court assumes, and will consider only those grounds properly raised in the state court. To the extent that DeShields raises new arguments, the Court concludes that they are procedurally barred.

DeShields first challenges the amount of the time spent on the closing argument by the prosecutor in comparison to the rebuttal argument. He also challenges the nature of the argument by the prosecutor in the closing arguments. The Respondent asserts that this claim is meritless. Because the argument itself was proper, the Respondent argues that DeShields cannot now establish that the result of his trial was unfairly affected by the argument.

DeShields points to a remark made by the prosecutor that DeShields alleges shifted the burden of proof to him. DeShields claims that the prosecutor's remarks could have led the jury to believe that the death penalty is automatic for a first degree murder conviction .unless the defendant offers mitigating evidence. However, the Respondent argues that under *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) and *Kennedy v. Dugger,* 933 F.2d 905, 915–16 (11th Cir.1991) there was no impermissible shifting of the burden, because the burden properly rests with the defense to establish mitigating circumstances and, therefore, in the overall context of the trial the comments were proper.

The Respondent also addresses a potential argument of DeShields with respect to the prosecutor appealing to the sympathy and emotion of the jury. The Respondent contends that all of the comments which DeShields challenges (or did in state court) were properly made and based on facts as established during the guilt phase of the trial. Respondent asserts there is no support for finding these statements to be im-proper and, therefore, the Court need not turn to the question of whether they affected the outcome of the trial. Respondent contends that once the argument is found to be proper, the inquiry is over and the Court need not look at the effect on the verdict.

The Respondent also addresses the question of whether or not certain comments in the prosecutor's statements to the jury amounted to an exploitation of the prosecutor's office. According to the Respondent, DeShields failed to object at trial or raise this argument on direct appeal and, therefore, the Delaware Superior Court determined that DeShields procedurally defaulted on this claim and the state Supreme Court summarily affirmed that decision. As a result, Respondent asserts that so long as the rule satisfies the test set out in *Bond v. Fulcomer,* 864 F.2d 306, 310 (3d Cir.1989) this Court is barred from considering a claim of constitutional error absent a showing of cause and prejudice. The Respondent contends that this issue was explicitly denied consideration by the state courts on the grounds of procedural default and therefore review in this proceeding is not proper.

Further, the Respondent argues that if the failure to object to the arguments is being relied on by DeShields as a claim for ineffective assistance of counsel then he has failed to exhaust his state remedies and review of such a claim is not proper in this habeas case.[7]

## 2. Discussion

■ The Court concludes that with respect to those claims related to the prosecutor's office and the potential exploitation of the office DeShields is procedurally barred from raising these claims. The Delaware Superior Court explicitly held that these claims were barred under Rule 61(i)(3) of the Delaware Superior Court Criminal Rules and the Delaware Supreme Court summarily affirmed this decision. Therefore, any future consideration by the state courts of the merits of this claim has been precluded by De-Shields' actions. As such, so long as the state court rule barring review is based on

---

**7.** *See* footnote 6 for a discussion of the interplay between Delaware's procedural bar and the ex-haustion requirement under federal habeas review.

adequate and independent state grounds, this court is precluded from reviewing the constitutional claim absent a showing of cause and prejudice. *Bond v. Fulcomer*, 864 F.2d 306, 312 (3d Cir.1989) (quoting *Neely v. Zimmerman*, 858 F.2d 144, 147 (3d Cir.1988)).

In order to determine if adequate and independent state grounds are present, the Court must employ a three part test which requires:

> (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the Petitioner's claims on the merits, and (3) the state courts consistently apply the procedural rules.

*Id.* at 312. Recently, in *Flamer* this Court determined that the first and third criteria of this rule were satisfied with regard to Delaware Superior Court Criminal Rule 61(i)(3). Likewise, in the instant case, the Court finds it is clear that all the state appellate courts refused, on procedural grounds, to review the merits of Petitioner's claims. Thus, for this claim to be considered, DeShields must demonstrate cause for the default *and* prejudice resulting therefrom. Absent a showing of cause and prejudice, DeShields must establish that a miscarriage of justice would result were the Petition not to be heard on the merits.

DeShields has not offered in this proceeding, nor has he offered in the state court, any explanation for his procedural default. Therefore, the Court finds he is unable to establish cause for his default. Also, DeShields has not shown that any prejudice resulted from the application of the procedural bar and thus, under the cause and prejudice standard this court cannot consider the merits of the subject claim. Finally, given the abundance of evidence against DeShields at trial, it is impossible for the Court to find that manifest injustice would result were the Court not to hear the merits of this claim. As a result, the Court is prevented by the state procedural bar from considering the merits of DeShields' claim insofar as it speaks to the prosecutor's comments with respect to his office.

 With regard to the comments of the prosecutor that DeShields argues imper-

missibly shifted the burden of proof during the sentencing phase, the Court concludes after reviewing the record that DeShields' interpretation is erroneous. Because DeShields failed to object to the remarks, this Court could only grant habeas relief on the grounds that the remarks were improper if the remarks constituted "plain error." *See United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1045–46, 84 L.Ed.2d 1 (1984). Given that the Court finds that the remarks were permissible, the Court finds no "plain error" requiring habeas relief.

 With respect to the prosecutor's other comments that DeShields alleges resulted in misconduct the Court will assume, without deciding, that the comments were improper. Even when assuming the comments were improper, the Court concludes that DeShields has failed to allege and would be unable to establish that the verdict would have been different but for the improper comments. In sum, the Court concludes this claim for relief is without merit.

### C. Trial Court Error Claims

#### 1. Failure to Properly Instruct

##### a. Parties' Contentions

DeShields claims that his rights to due process under the Fourteenth Amendment were violated because the trial court failed to properly instruct the jury on the issue of mitigating circumstances (D.I. 4 ¶ d). DeShields argues that the instructions given to the jury by the trial court erroneously suggested that the jury must unanimously find a mitigating circumstance to exist in order to consider it and thus the instructions violated the rule as presented in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Although the Respondent concedes that this issue has been exhausted, he argues that DeShields is unable to overcome the *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 "new rule" analysis in order to have *Mills* apply retroactively to his case.

Respondent further argues that even if *Mills* were not considered a new rule or *Teague* was found not to preclude consideration of the given instructions, federal review

is barred by DeShields' procedural default in the state courts.

The Respondent further contends that even if review at this time is not barred by any of the above principles, the instruction given does not violate the rule as announced in *Mills*. According to the Respondent, the instruction was not defective because there was no reasonable likelihood that the jury would understand the instruction to require unanimity in considering a mitigating circumstance. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 307–08 (3d Cir.1991); *Stringer v. Jackson*, 862 F.2d 1108, 1112 & n. 2 (5th Cir. 1988), *vacated on other grounds*, 494 U.S. 1074, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990).

### b. Legal Standards

The claim of the Petitioner is concerned with the trial court's instructions as to mitigating circumstances. Petitioner claims it is possible that the jury believed it necessary to unanimously agree on a mitigating circumstance before considering it in its penalty phase deliberations. The Supreme Court has addressed challenges to jury instructions on mitigation in two recent cases. In both cases, there were challenges based upon ambiguity in the instructions.

In 1988, the Court considered whether the jury could have adopted the interpretation offered by the Petitioner. In *Mills v. Maryland*, 486 U.S. 367, 375–76, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988) (vacating death sentence where it appeared that, based upon instructions, jury may have believed that they were precluded from considering mitigating factors that were not unanimously agreed upon), the Supreme Court stated that the relevant inquiry "is whether Petitioner's interpretation of the sentencing process is one a reasonable jury could have drawn from the instructions given by the trial judge and from the verdict form employed in this case."

More recently, the Court adopted a different approach. In *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990), the Supreme Court stated that:

the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction, a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such an inhibition. This 'reasonable likelihood' standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical 'reasonable' juror could or might have interpreted the instruction.

The Supreme Court went on to state,

Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* 494 U.S. at 380–81, 110 S.Ct. at 1198.

### c. Discussion

■ Whether a Petitioner seeks federal habeas relief based on a "new" rule under *Teague* is a threshold issue. *Zettlemoyer*, 923 F.2d at 303. Therefore, the Court will consider whether the rule announced in *Mills* is a new rule for *Teague* purposes prior to addressing the question of the procedural default. DeShields' convictions became final on May 6, 1988. *Mills* was not announced until June 6, 1988. Even so, the Court concludes that *Mills* did not announce a new rule because it did not break new ground.

A new rule within the meaning of *Teague* is one that "breaks new ground or imposes a new obligation on the states or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. The Court concludes that the rule announced in *Mills* is not a new rule within the meaning of Teague as the result was dictated by

precedent existing at the time the defendant's conviction became final.

Insofar as Petitioner implies that these cases break new ground or depart from prior precedent, this Court must respond that they do not. The requirement that juries in capital cases be permitted to consider all mitigating factors and aspects of a defendant's character and to give effect to that evidence was firmly established in *Eddings* [*v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1] and *Lockett* [*v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973]. *Mills* and *McKoy* [*v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369] are based upon this principle and both rely on the *Eddings* and *Lockett* line of cases; they represent a clear application of existing law. *See Penry v. Lynaugh,* [492 U.S. 302, 313–20] 109 S.Ct. [2934] 2944–47 [106 L.Ed.2d 256] (rule that jury be given instruction allowing it to consider mitigating evidence and give effect to such evidence is not new rule, but is dictated by *Eddings* and *Lockett* ).

*Byrd v. Delo,* 733 F.Supp. 1334 (E.D.Mo. 1990). *Mills* is nothing more than a mere extension of then existing precedent to a new factual scenario. Therefore, the Court concludes that the *Mills* rule is not a "new rule" and thus the Court will retroactively apply the principle announced in *Mills* to De-Shields' improper mitigation instruction claim.

■■■ The instruction called into question reads as follows:

If you do unanimously find beyond a reasonable doubt that one or more statutory aggravating circumstances exist, you must then weigh and consider the mitigating circumstances and the aggravating circumstances including, but not limited to, the statutory aggravating circumstance or circumstances that you have already found to exist. You must weigh all relevant evidence in aggravation and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender.

In order to recommend a sentence of death, you must unanimously find that the aggravating factors outweigh the mitigating factors. Regardless of the circumstances, you, in your discretion, may recommend that a sentence of life imprisonment without probation or parole be imposed.

(Transcript, J–133 to J–134). The Court concludes that the jury instruction at issue is not ambiguous and does not create a situation where the Petitioner's interpretation—which is that the jury would believe they needed to unanimously agree to weigh a mitigating circumstance—is one that a reasonable jury could have drawn from the instructions. *Mills v. Maryland,* 486 U.S. 367, 375–76, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988) (vacating death sentence where it appeared that based upon instructions, jury may have believed that they were precluded from considering mitigating factors that were not unanimously agreed upon).

Further, under the more recent dictates of *Boyde, id.,* the Court concludes that the instruction is not ambiguous and therefore is not subject to erroneous interpretation. The instruction is clear that the jury was required to unanimously find, beyond a reasonable doubt, a single statutory aggravating circumstance in order to consider the imposition of the death penalty. The instruction was equally clear that once the jury unanimously found the existence of an aggravating circumstance beyond a reasonable doubt, the jurors were to consider all the evidence, both in aggravation and mitigation of the circumstances, prior to unanimously concluding whether the aggravating circumstances outweighed the mitigating circumstances.

There has been no showing that the instruction given was ambiguous or that the instruction as given, in the context of all of the other information provided to the jurors, would result in a reasonable likelihood of a different outcome in this case. Thus, the Petitioner's claim on the jury instruction will be dismissed.

2. Failure to Strike Jurors for Cause

### a. Parties' Contentions

DeShields claims that when the trial court failed to strike two potential jurors for cause that his due process rights under the Four-

teenth Amendment were violated. (D.I. 4 ¶ f). According to DeShields, the trial court failed to strike for cause two prospective jurors who indicated on voir dire that they would "automatically vote for the death penalty" if DeShields were to be found guilty of first degree murder. DeShields raised a similar issue on direct appeal and, therefore, the Court finds that he has exhausted his state remedies. *See Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

The Respondent agrees that neither a person who would automatically vote for the death penalty nor one who would automatically vote against it is qualified to sit on the jury. (D.I. 9, at 63 (citations omitted)). Respondent asserts, however, that the trial court judge's determination, as to whether a juror falls automatically into one of these categories and therefore is unable to apply the law as instructed by the Court, is a determination that is entitled to deference and is presumptively correct in a federal habeas review. *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985); *Patton v. Yount,* 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 2891 n. 12, 81 L.Ed.2d 847 (1984); *Swindler v. Lockhart,* 885 F.2d 1342, 1345–46 (8th Cir.1989).

The Respondent contends that if the Petitioner seeks to overcome the presumption of factual validity imposed by 28 U.S.C. § 2254(d), he must allege a basis in his Petition and establish the reasons for its non-applicability. According to Respondent, DeShields has failed to allege a basis or articulate a reason why the state court findings should not be presumed correct.

The Respondent continues that in addition to the failure to allege why the presumption of validity should not attach, DeShields also fails to apply the proper standard for determining if a prospective juror was to be barred on the basis of his responses to the questions posed. According to the Respondent, the jury selection process must be viewed in its entirety, not simply viewing responses to particular questions. Viewed in its entirety, Respondent contends it is clear that the jurors to whom DeShields objects unequivocally acknowledged their ability to impose a life sentence instead of the death penalty. Therefore, Respondent contends DeShields' claim must fail. *Pruett v. Thompson,* 771 F.Supp. 1428, 1453–55 (E.D.Va. 1991).

Respondent also contends that DeShields' challenge in this regard must fail because he has not shown any actual prejudice resulting from the denial of his challenge for cause. Relying on the decision in *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), Respondent argues that the trial judge's decision not to remove the prospective jurors for cause did not violate either DeShields' Sixth Amendment right to an impartial jury nor his Fourteenth Amendment Right to due process.

In this regard, Respondent asserts that DeShields is unable to show any prejudice because one of the jurors was not seated and the other could have been peremptorily challenged by DeShields. Thus, Respondent contends that absent a showing that the exercise of a challenge in some way prejudiced him or that he was unable to challenge the second juror, DeShields' complaints about the jury selection process are without merit.

**b. Legal Standard**

In *Morgan v. Illinois,* —— U.S. ——, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), the United States Supreme Court held that a capital defendant may challenge for cause any juror who would automatically vote for the death penalty in every case.

> A juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views. If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.

*Morgan v. Illinois* —— U.S. ——, ——–——, 112 S.Ct. 2222, 2229–30, 119 L.Ed.2d 492 (1992) (reversing Illinois Supreme Court and vacating death sentence in which defendant was not permitted to question prospective jurors about whether they would automatically vote for death penalty upon finding capital defendant guilty).

Clearly, the Sixth and Fourteenth Amendments guarantee a defendant the right to a trial by an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 2276, 101 L.Ed.2d 80 (1988). "[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment ... is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (citation omitted).

In *Ross*, a prospective juror had declared initially that he could vote to recommend a life sentence under the appropriate circumstances, but, upon further examination by defense counsel, the prospective juror indicated that once the jury found the defendant guilty of murder, he would vote to impose the death penalty automatically. *Ross*, 487 U.S. at 83–84, 108 S.Ct. at 2275–76. The trial court denied the defendant's motion to remove that juror for cause, and then the defendant exercised one of his peremptory challenges. *Id.* at 84, 108 S.Ct. at 2276. The Supreme Court noted that if that challenged juror had been a member of the jury, then the sentence would have to be overturned. *Id.* at 85, 108 S.Ct. at 2276–77 (citing *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)).

The *Ross* Court rejected "the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." *Ross*, 487 U.S. at 88, 108 S.Ct. at 2278. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* at 88, 108 S.Ct. at 2278. "The 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.*

#### c. Discussion

During the voir dire examination in DeShields' case, a panel of 132 prospective jurors were asked general questions. If a juror answered affirmatively to any one of the general questions, that juror was then individually questioned by the court.

The first juror that DeShields claims should have been struck for cause, JUROR "A", responded that he would have imposed the death penalty automatically were he to find someone guilty of first degree murder. After this response, JUROR "A" was taken from the courtroom and a discussion ensued between the attorneys and the court with regard to clarifying the question for the juror. JUROR "A" was then returned to the courtroom and asked if he could follow Delaware law as instructed by the court and impose either life imprisonment or the death penalty were he to find the person guilty of first degree murder. To this question, JUROR "A" answered yes. JUROR "A" was then specifically asked if he would be able to vote for life imprisonment and he responded yes. Then he was asked if he could impose the death penalty and he responded yes. Following these questions, JUROR "A" was asked if he could vote in favor of life imprisonment were he to find the defendant guilty of first degree murder and he responded affirmatively. DeShields' attorney challenged JUROR "A" for cause contending that based on his responses, JUROR "A" would automatically impose a death sentence on a conviction for murder in the first degree. The court refused to strike JUROR "A". DeShields' attorney exercised a preemptory challenge and JUROR "A" was struck.

The second juror referred to by DeShields, JUROR "B", was questioned individually shortly after JUROR "A". Initially, JUROR "B" responded that if he found a person guilty of first degree murder he would "automatically vote for the death penalty." Again, follow-up questions were asked and the law was clarified for JUROR "B". Specifically, JUROR "B" was told that state law permits either the imposition of a life sentence or the

death penalty on a conviction for first degree murder. Following this clarification, JUROR "B" was asked if he could "vote not to impose the death penalty, even if you found the defendant guilty of first-degree murder." To this question, JUROR "B" responded "Could I? Yes." A few follow-up questions were asked to further clarify the views of JUROR "B". After the questioning, the trial court was satisfied that JUROR B could decide the issues of the case with an open mind, decide the facts impartially and apply the law as instructed. (Transcript, A156–57). DeShields challenged JUROR "B" for cause alleging that JUROR "B" would automatically impose the death penalty, although DeShields admitted that JUROR "B" had retracted his initial answer. DeShields' challenge to JUROR "B" was rejected and neither the defense nor prosecution exercised a peremptory challenge. JUROR "B" was then seated as the first juror for the trial of DeShields' case.

■ After a review of the state court records and findings of the state court on that record, the Court concludes that DeShields has no constitutional claim with respect to JUROR "A". JUROR "A" was not seated and the mere loss of a preemptory challenge is insufficient to give rise to a constitutional claim. *See Ross,* 487 U.S. at 88, 108 S.Ct. at 2278. Accordingly, DeShields' claim with respect to JUROR "A" will be dismissed.

■ With respect to JUROR "B", the Court concludes that JUROR "B", although initially responding that he would impose the death sentence if the jury returned a verdict of first degree murder, later indicated that he could follow the instructions of the Court and impose either a life sentence or a death sentence. In *Ross,* the Court found that a person can go from giving an equivocal response to giving an unconstitutionally unequivocal response, just as a juror go from giving an impermissible response to clarifying it into a constitutionally appropriate response. 487 U.S. at 83–85, 108 S.Ct. at 2275–77. Thus, the fact that JUROR "B" initially indicated that he would automatically vote for the death penalty is not a sufficient ground to support DeShields' habeas claims. The record is clear that after clarification of

the relevant question by the Court and further questioning, JUROR "B" indicated an ability to be impartial, follow the instructions of the court and impose a sentence within those allowed by law that he felt appropriate. The views of JUROR "B" cannot be said to be such that they would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (citation omitted).

### 3. Failure to Assure Knowing Voluntary Waiver

#### a. Parties' Contentions

DeShields claims that his right to a fair trial under the Fourteenth Amendment was violated when the trial court failed to assure that he had knowingly and voluntarily waived his rights pursuant to 11 Del.C. § 4209(c)(2) which permits "argument by the State, the defendant and/or his counsel on the punishment to be imposed." (D.I. 4 ¶ g).

The Respondent answers that DeShields has failed to present and exhaust this contention in the state courts and is now procedurally barred from raising it in this habeas proceeding. Respondent further answers that at the time DeShields' conviction became final, the courts would not have considered an inquiry into the knowing and voluntary nature of the waiver to be required and, therefore, such a requirement should not be retroactively applied to DeShields' penalty hearing because it would amount to a "new rule" under *Teague.*

With respect to the question of exhaustion, the Respondent contends that DeShields only made passing reference to this issue in his request for post-conviction relief in state court and the reference was made in the context of whether his rights were violated by him not being able to address the jury in the penalty phase of his trial. According to the Respondent, such a passing reference, without briefing on the issue and without decision by the state court does not satisfy the requirements of exhaustion since the issue cannot be said to have been fairly presented to the state court. Moreover, the

Respondent contends then that DeShields is procedurally barred in the state court from raising this issue pursuant to Superior Court Criminal Rules 61(i)(1) (requiring all claims to be raised within three years), 61(i)(2) (refusing to permit successive applications) and 61(i)(3) (no right to raise an issue that had not been raised at trial or on direct appeal).

The Respondent contends that if the Court finds DeShields has exhausted this claim and is not procedurally barred from raising the issue, then under retroactivity principles announced in *Teague*, DeShields should not now be permitted to raise this claim. According to the Respondent, the issue of waiver was not dictated by precedent then existing and it clearly imposes a new obligation on the state. Therefore, Respondent claims the rule is a new rule and should not be invoked on collateral attack of a conviction that was final when the new rule was announced.

### b. Legal Standard

In *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court held that in a federal trial, while it was error to fail to provide the defendant with the option to speak to the jury prior to sentencing, it was not grounds for *habeas* relief.

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'

*Id.* at 429, 82 S.Ct. at 471–72 (citations omitted) (cited with favor in *McGautha v. California*, 402 U.S. 183, 219 n. 22, 91 S.Ct. 1454, 1473 n. 22, 28 L.Ed.2d 711 (1971)).

Since the time *Hill* was decided there has been a split among the circuit courts as to whether or not the right of allocution is a constitutionally protected right. The pre-dominant factor distinguishing the cases on either side of this issue is whether the defendant has made an affirmative request to speak or not. The Fourth, Fifth, Ninth and Eleventh Circuits, under those circumstances have found a constitutional dimension present with regard to a defendant's right to allocution. *See Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir.1992) (Constitutional right attaches only when the defendant makes an affirmative request to speak); *United States v. Moree*, 928 F.2d 654, 656 (5th Cir.1991); *United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir.1991); *Ashe v. North Carolina*, 586 F.2d 334 (4th Cir.1978). The Fifth, Sixth and Eleventh Circuits have all decided cases where they have held that no constitutional right to allocution exists. *United States v. Coffey*, 871 F.2d 39, 40 (6th Cir.1989) (no constitutional basis for allocution); *United States v. Prince*, 868 F.2d 1379, 1396 (5th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989) (where defendant did not make a request to address the Court then there is no constitutional violation); *United States v. Fleming*, 849 F.2d 568, 569 (11th Cir.1988).

### c. Discussion

■ The Court concludes that this claim of Petitioner has not been exhausted in the state courts because the issue was not raised in the state courts. The only reference to this issue in the state courts was in the context of whether or not an ineffective assistance of counsel claim existed due to the alleged failure of DeShields' attorney to advise DeShields of his right to address the jury. Neither the issue of whether the right to allocution is of constitutional dimension, nor the need for the trial judge to inquire as to whether the waiver of this right was knowing and voluntary, were ever raised or presented by the Petitioner.

Further, the Court concludes that DeShields is now procedurally barred from raising this claim in the present proceeding. There is no question that Superior Court Rule 61(i)(1), (2) and (3) would be applicable to DeShields' attempt to raise this issue, and DeShields has not presented any evidence to establish the necessary cause and prejudice

to excuse his procedural default. Thus, the Court concludes it is barred from reviewing this claim.

However, if the merits of this claim could be addressed in this proceeding, the Court concludes that the rule that DeShields seeks to invoke is not one that could be considered a generally accepted constitutional principle. DeShields has cited to no authority to support a finding that a trial judge is under an obligation to make an inquiry into the knowing and voluntary nature of a defendant's agreement to have his attorney address the jury on his behalf during the penalty phase of a trial. Accordingly, the Court concludes that this claim should be dismissed in any event.

## D. Eighth Amendment Claim

### 1. Parties' Contentions

DeShields claims that death by hanging or lethal injection is cruel and unusual punishment in violation of the Eighth Amendment. (D.I. 4 ¶ e).

The Respondent contends that DeShields after electing to receive a lethal injection no longer has a cognizable interest in the constitutionality of death by hanging and therefore the Court should not provide an advisory opinion with regard to the constitutionality of death by hanging as a penalty. *See Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977); *Preiser v. Newkirk*, 422 U.S. 395, 403, 95 S.Ct. 2330, 3335, 45 L.Ed.2d 272 (1975).

Alternatively, the Respondent argues that the Petitioner's claim must fail on the merits. According to the Respondent, DeShields failed to present any facts from which the Court could conclude that death by hanging violates the Eighth Amendment. In order to find a violation of the Eighth Amendment the Petitioner must show that the method, if properly performed, inherently involves the infliction of pain beyond the "mere extinguishment of life" so as to cause "unnecessary torture or a lingering death", *In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1980), or unneeded "terror, pain, or disgrace." *Wilkerson v. Utah*, 99 U.S. 130, 135–36, 25 L.Ed. 345 (1878).

### 2. Discussion

On July 9, 1993, DeShields exercised his right under Delaware law to be executed by lethal injection as opposed to death by hanging. In view of this election, the Court concludes that DeShields lacks standing to challenge the constitutionality of execution by hanging. *See Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977).

The question of the constitutionality of death by lethal injection was raised by DeShields in his Rule 61 motion to the Delaware Superior Court. He failed, however, to raise this challenge in his appeal to the Delaware Supreme Court of the Superior Court's denial of his Rule 61 motion. Therefore, the Court finds the claim that death by lethal injection violates the Eighth Amendment has not been exhausted. For a claim to be properly exhausted, it must be fairly presented to the state courts. It is the Petitioner that bears the burden of establishing that exhaustion has been satisfied. *Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990) (citing *Santana v. Fenton*, 685 F.2d 71, 73 (3d Cir.1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983)); *Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir.1982) (per curiam).

Moreover, as recently stated by this Court in *Flamer:*

[A]ssuming the present Petition were to be dismissed for failure to exhaust, the Court concludes that [Petitioner] would be procedurally barred in the state courts from raising the claim. *See* Del.Super.Ct.Crim.R. 61(i)(2) (prohibiting review of successive Petitions). It is the Court's view that [Petitioner] would be unable to show the cause and prejudice necessary to permit a review of the claim. In this regard, there is no explanation provided by Petitioner for his failure to address this claim in the state court. Further the Court is convinced that [Petitioner] would be unable to establish that prejudice resulted from the alleged failure of his counsel ...

*Flamer v. Snyder, et al.,* 827 F.Supp. 1079, 1100 (D.Del.1993). As in *Flamer,* the Court concludes that DeShields is barred from having his Eighth Amendment claim reviewed in a federal habeas Petition pursuant to 28 U.S.C. § 2254.[8]

### E. Delaware Supreme Court Review

#### 1. Parties' Contentions

DeShields claims that the Delaware Supreme Court erred in its review of the Superior Court decision which resulted in a violation of his due process rights under the Fourteenth Amendment (D.I. 4 ¶ h). According to DeShields,

> [t]he Supreme Court erred as a matter of law in connection with their statutory review of the imposition of the death penalty in that the Court concluded after a consideration of the totality of evidence in aggravation and mitigation that the death penalty was warranted and in concluding that the evidence supported the jury's finding of the statutory aggravating circumstance in violation of DeShield's due process rights as guaranteed under the Fourteenth Amendment.

(D.I. 2 ¶ 8, as it appears in its entirety).

DeShields contends, on direct appeal, pursuant to § 4209(g) the Delaware Supreme Court was required to determine whether (1) the death penalty was arbitrarily or capriciously imposed; (2) if the death penalty was disproportionate; and (3) whether the State had established, beyond a reasonable doubt, that a statutory aggravating circumstance had been established. The Delaware Supreme Court held that all three statutory aggravating circumstances had been proven beyond a reasonable doubt when the evidence was viewed in the light most favorable to the prosecution. Further, the Delaware Supreme Court held that considering the totality of the evidence, the death penalty had not been arbitrarily or capriciously imposed and that the death penalty was proportionate to the penalty recommended or imposed in other cases. Because all of these issues were considered on direct appeal, DeShields has

exhausted his state court remedies on this claim. *See Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

The Respondent contends that when reviewing the decision of a state supreme court the federal court's analysis becomes only a question of whether after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the statutory aggravating circumstance beyond a reasonable doubt." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). Further, on federal habeas review the Court is to determine only "whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Id.* In applying this standard, the Court is not to reweigh the evidence rather it is to do no more than determine whether any rational trier of fact could have found the statutory aggravating circumstance beyond a reasonable doubt when all the evidence is viewed in the light most favorable to the prosecution. *Id.* at 781–783, 110 S.Ct. at 3102–04.

The Court finds that the issues raised in the state court regarding DeShields' death sentence were properly considered by the Delaware Supreme Court. There was an abundance of evidence presented in the state courts to establish that each of the three statutory aggravating circumstances existed and, therefore, this Court concludes it is precluded from reweighing the evidence and must uphold the imposition of the death penalty by the state court.

#### 2. Legal Standards

In *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court outlined the appropriate standard of review for district courts reviewing a state court's imposition of the death penalty.

> [I]n determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think

---

**8.** *See footnote 6, for a discussion of Delaware's* unique statutory scheme and interaction with the exhaustion requirement of federal habeas review.

the more appropriate standard of review is the "rational factfinder" standard established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We held in *Jackson* that where a federal habeas corpus claimant alleges that his state conviction is unsupported by the evidence, federal courts must determine whether the conviction was obtained in violation of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), by asking "whether, after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citation omitted). These considerations apply with equal force to federal habeas review of a state court's finding of aggravating circumstances. Although aggravating circumstances are not "elements" of any offense ... the standard of federal review for determining whether a state court has violated the Fourteenth Amendment's guarantee against wholly arbitrary deprivations of liberty is equally applicable in safeguarding the Eighth Amendment's bedrock guarantee against the arbitrary or capricious imposition of the death penalty. Like findings of fact, state court findings of aggravating circumstances often require a sentencer to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Lewis v. Jeffers,* 497 U.S. 764, 781–82, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (citation omitted).

### 3. Discussion

The Court concludes that there is no question that the state courts adequately considered the relevant evidence in its review of DeShields' instant claims. The Court finds there was sufficient evidence of all the statutory aggravating circumstances to assure that a rational trier of fact could find the existence of each of the relevant statutory aggravating circumstances and that the Delaware Supreme Court performed its function in determining that the sentence imposed was neither arbitrary nor capricious. As the Respondent points out in his papers, the conviction itself presumptively established one statutory aggravating circumstance, i.e., the killing of the victim had been committed during a robbery. *See* 11 Del.Code §§ 636(a)(2), 4209(e)(2). On this record, the Court concludes DeShields' claim must be dismissed.

### III. CONCLUSION

For the reasons discussed, the Court concludes DeShields' Petition for habeas relief filed pursuant to 28 U.S.C. § 2254 lacks merit and should be dismissed. Further, DeShields' Motion for a Stay of Execution will be denied as there exists no serious legal issue asserted in DeShields' Petition. The Court will grant Petitioner's Motion to Proceed In Forma Pauperis.